JOSEPH HOLMES et al. v. BENJAMIN STOUT and JOHN WILLIAMS.

Possession, to constitute notice of a claim of title sufficient to put a purchaser on inquiry, must be an actual possession, manifested by notorious acts of ownership, such as would naturally be observed by and known to the public.

The grantee of a *bona fide* purchaser without notice, is not to be charged with the incumbrance or fraud, although known to such grantee before he acquired his title.

*Vredenburgh* and *Randolph*, for complainants.

*Ryall* and *Wall*, for defendants.

THE CHANCELLOR. On the twenty-third of August, eighteen hundred and seventeen, Andrew Bell conveyed to John Holmes, junior, a tract of land of sixty-four acres and four hundredths, in the county of Monmouth, for one hundred and nineteen dollars, and took his note for the money.

On the tenth of December, eighteen hundred and seventeen, John Holmes, junior, conveyed to John Holmes, senior, twenty-two acres, parcel of the lot of sixty-four acres and four hundredths, for fifty dollars.

On the twenty-seventh of August, eighteen hundred and twenty-seven, John Holmes, junior, represented to Mr. Bell that he had lost his deed, and that it had not been recorded, and

[Holmes et al. v. Stout and Williams.]

urged him to make out a new deed for the sixty-four acres and four hundredths of an acre lot, to his brother-in-law, Richard Lane. Mr. Bell at that time declined making a new deed; but on the next day, Holmes, junior, and Lane called upon him and urged him till he was induced to execute to Lane a new deed for the premises, dated the twenty-eighth of August, eighteen hundred and twenty-seven; and Lane then paid Mr. Bell sixty dollars on Holmes's note. Part of the money due on the note still remains unpaid. The deed was recorded on the seventeenth of September, eighteen hundred and twenty-seven.

In eighteen hundred and thirty, Lane died, intestate, and his administrators, by virtue of an order of the orphans' court, sold and conveyed the whole premises to Stout and Williams, the defendants, by deed dated the seventh of November, eighteen hundred and thirty-two, and recorded on the twenty-fourth of November, eighteen hundred and thirty-two. The deed from John Holmes, junior, to John Holmes, senior, was not recorded until after the execution of the administrators' deed to Stout and Williams.

The complainants, claiming under John Holmes, junior, now file their bill, and seek a perpetual injunction, to quiet their title, and to set aside so much of the deed from Bell to Lane as covers the twenty-two acres before conveyed to John Holmes, senior.

From the testimony in the case, Lane appears to have been a purchaser for a valuable consideration, and as his deed was duly recorded before the deed from John Holmes, junior, to John Holmes, senior, his claim to the premises is to be preferred, unless it can be shown that he purchased *mala fide*, or with notice of the deed to John Holmes, senior: *Act of 7th June,* 1799, *sec.* 8, *Pat.* 399.

It is not enough to show that he had notice of the deed from Mr. Bell to John Holmes, junior. Lane purchased of Holmes, junior, and whether the conveyance were made by Holmes or Bell, was as between them immaterial.

There is no proof of actual notice to Lane, nor of any constructive notice, unless it be under the allegation of possession

[Holmes et al. v. Stout and Williams.]

of the premises by Holmes, senior. Possession is sometimes notice of claim of title, sufficient to put a purchaser on inquiry; but it must be an actual possession, manifested by notorious acts of ownership, such as would naturally be observed by, and known to the public.

In this case there is no evidence of such possession. The premises consist of uninclosed woodland, except about two acres, which are included within the inclosure of an adjoining tract of forty-five acres. Upon it John Holmes, senior, occasionally cut wood, which cutting, under the circumstances, would be regarded as so many trespasses quite as probably as acts of ownership.

As to possession being notice, see *Daniels* v. *Davison*, 16 *Ves.* 249; *Taylor* v. *Stibbert*, 2 *Ves.* 440; *Smith* v. *Low*, 1 *Atkyns*, 490; *Allen* v. *Anthony*, 1 *Merivale*, 282; 2 *Fonb. Eq. B.* 2, *ch.* 6, *sec.* 3, and note (*m.*); *Hanbury* v. *Litchfield*, 2 *Mylne and Keene*, 629, 632, 3; *Flagg* v. *Mann*, 2 *Sumner R.* 486, 554, 555.

If Lane, then, were a bona fide purchaser without notice, the sale to the defendants by the administrators may be good, even though the defendants had such knowledge and notice of all the circumstances of the case. For it is well settled, as a general rule, that the grantee of a bona fide purchaser without notice, is not to be charged with the incumbrance or fraud, although directly known to him before he acquired his title; otherwise the loss must be visited upon the bona fide purchaser, as he would thereby be obliged to keep the property, or to sell it at such price as would enable his purchaser to discharge the incumbrance or purge the fraud: *Harrison* v. *Forth*, *Prec. in Ch.* 51; 2 *Fonb. Eq. B.* 2, *ch.* 6, *sec.* 2; *Lowther* v. *Carlton*, 2 *Atk.* 242; *Ferrars* v. *Cherry*, 2 *Vern.* 383; *Mertins* v. *Jolliffe*, *Amb. R.* 313; *Sweet* v. *Southcote*, 2 *Brown's Ch. R.* 66; *McQueen* v. *Farquhar*, 11 *Ves.* 477, 8; *Ingram* v. *Pelham et al.*, *Amb.* 153; *Alexander* v. *Pendleton*, 8 *Cranch*, 462; *Fitzsimmons* v. *Ogden*, 7 *Cranch*. 2.

In this view of the case, it is unnecessary to inquire into the

alleged notice to the defendants. The bill must be dismissed, with costs.

Decree accordingly.